UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAYFUN KARA,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>PAMELA BONDI et al.,<br><br>　　　　　Respondents. | CASE NO. 2:26-cv-00105-JHC<br><br>ORDER |

# I

## INTRODUCTION

This matter comes before the Court on Petitioner Tayfun Kara's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has considered the materials filed in support of and in opposition to the motion, the record, and the applicable law. Being fully advised, the Court GRANTS the petition.

# II

## BACKGROUND

Petitioner alleges these facts: He is a citizen of Turkey. Dkt. # 1 at 1. He entered the United States without inspection on or about December 22, 2024, and was soon detained. *Id*. 2, 6. Since January 7, 2025, he has been confined at the Northwest Immigrant Processing Center

ORDER - 1

(NWIPC). *Id.* at 2. Removal proceedings began on March 17, 2025, and within that proceeding, Petitioner sought asylum, withholding of removal under Section 241(b)(3) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(b)(3)(A), and withholding of removal under the Convention Against Torture (CAT). *Id.* at 6.

On July 3, 2025, an immigration judge (IJ) found petitioner inadmissible under INA § 212(a)(6)(A)(i) (codified at 8 U.S.C. § 1182(a)(6)(A)(i)), denied his asylum petition, and issued a final order of removal. *Id.* at 7. Concurrent with his removal order, the government issued Petitioner a withholding of removal, which prevents the government from deporting him to Turkey. *Id.*

Petitioner says that, after this decision, the government never "identified, designated, or pursued removal to any alternative country," and because he has no lawful status or right of residence anywhere else, his removal is "legally and practically infeasible." Dkt. # 1 at 7. Nor have there been efforts to secure travel documents or otherwise bring about his removal to a third country. *Id.*

For its part, the government asserts, in a sworn declaration attached to its return memorandum, that Petitioner has "refused to provide any third countries he would be willing to go to." Dkt. # 5 ¶ 12 (declaration of Immigration and Customs Enforcement (ICE) Deportation Officer Gennadiy Baz). The government says in its return memorandum (but not in the declaration) that Petitioner "was served with a Failure to Comply Notice on December 12, 2025." Dkt. # 4 at 2. And the government asserts that on January 13, 2026, it served on Petitioner a "form 1229a, Warning for Failure to Depart," which Petitioner refused to sign to acknowledge personal service or "comply with any requests to assist in any way to accomplish a third country removal." Dkt. # 5 ¶ 13.

On January 12, 2026 (the day before the alleged receipt of the referenced form), Petitioner filed the present habeas petition, offering three bases on which to grant his habeas petition.

## III
### DISCUSSION

A.  Legal Standards

   1.  Habeas relief

Federal district courts have the authority to grant a writ of habeas corpus. 28 U.S.C. § 2241(a). But this relief can be extended only under certain conditions. *See* 28 U.S.C. § 2241(c). One such condition is if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" *Id.* "The [habeas] petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

   2.  Due process

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. It "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases); *see also Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) ("'It is well established that the Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings.").

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)

(quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). And the Supreme Court has held that noncitizen "detainees are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *J. G. G.*, 604 U.S. at 673 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

In evaluating how much process is due in the immigration context, courts have recently applied the three-factor balancing test from *Mathews v. Eldridge*. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) ("*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context.").[1] Under this test, determining whether a governmental action violates "the specific dictates of due process [ ] requires consideration of three distinct factors," including the affected private interest, the risk of an erroneous deprivation of that interest given procedural safeguards, and the government's own interests in the challenged process. *Matthews v. Eldridge*, 424 U.S. at 335.

B.   Analysis

The Court addresses Petitioner's three main arguments.

1.   Constitutionality of continued detention

Petitioner first contends that his detention since December 2024 is unconstitutional since his removal is not reasonably foreseeable. Dkt. # 1 at 18–19. Petitioner says that under

---

[1] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention. 53 F.4th at 1207. In applying *Mathews*, the *Rodriguez Diaz* court recognized that other circuits have applied *Mathews* to due process challenges to immigration proceedings, the Ninth Circuit itself has "regularly applied *Mathews* to due process challenges to removal proceedings[,]" and the Supreme Court has applied *Mathews* to a due process challenge to an immigration exclusion hearing. *Id.* at 1206; *see also Landon v. Plasencia*, 459 U.S. 21 (1982). In recent months, district courts in this Circuit have repeatedly applied *Mathews* to resolve habeas petitions brought by noncitizens who are challenging their detentions. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (applying the Mathews test and collecting cases employing this test in the context of immigration detention); *Tzafir v. Bondi*, 2025 WL 3724708, at *4 (W.D. Wash. Dec. 24, 2025) (applying *Mathews* to a habeas petition brought by a noncitizen); *Nguyen v. Bondi*, 2026 WL 183819, at *5 (W.D. Wash. Jan. 23, 2026) (same); *Tran v. Bondi*, 2025 WL 3725677, at *7 (W.D. Wash. Dec. 24, 2025) (same). The Court likewise applies *Mathews* here.

*Zadvydas*, the Fifth Amendment's due process guarantee prevents the indefinite detention of noncitizens, and after a "presumptively reasonable" six-month period of detention, the noncitizen has "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Dkt. # 1 at 8 (citing *Zadvydas*, 533 U.S. at 701).  Petitioner says that the six-month period elapsed on January 3, 2026 (six months after the July 2025 entry of the final removal order).  Petitioner argues that his lack of lawful status or right of residency outside of Turkey (where he cannot be removed) and the government's failure to identify any third countries or take steps towards removal (like securing travel documents) establish his removal is not reasonably foreseeable. *Id.* at 18.  He says that since his detention cannot thus be "reasonably related to the purpose of effectuating removal," it violates due process. *Id.* at 18–19 (citing *Zadvydas*, 533 U.S. at 690, 699–700).

At the outset, the Court finds that Petitioner has made the initial showing under *Zadvydas*.  The removability period began on July 3, 2025, and ran until January 3, 2026. Dkt. # 1 at 18.  During that period, the government's detention of Petitioner was presumptively reasonable. *See Zadvydas*, 533 U.S. at 701.  Since that period has elapsed, the government must now respond "with evidence sufficient to rebut" Petitioner's showing that removal is reasonably foreseeable. *Id.*

Respondents do not argue that his removable is reasonably foreseeable but contend that Petitioner cannot claim his detention is unreasonable since he has not cooperated with his removal efforts. Dkt. # 4 at 11 (citing *Pelich v. I.N.S.*, 329 F.3d 1057, 1061 ("A [noncitizen] cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with the INS's efforts to remove him.")).  Respondents assert, in a sworn declaration attached to the return memorandum, that Petitioner has "refused to provide any third countries he would be willing to go to." Dkt. # 5 ¶ 12.  Respondents assert that on January 13, 2026, an ICE

ORDER - 5

officer served on Petitioner a "form 1229a, Warning for Failure to Depart," which Petitioner refused to sign to acknowledge personal service, and that Petitioner refused to "comply with any requests to assist in any way to accomplish a third country removal." *Id.* ¶ 13. Respondents urge this Court to apply *Pelich* and hold that, since Petitioner "continues to refuse to comply in good faith with ICE's removal efforts, he 'cannot meet his burden to show that there is no significant likelihood of removal in the foreseeable future.'" Dkt. # 4 at 11 (citing *Lema v. INS*, F.3d 853, 856 (9th Cir. 2003)).

Courts in this Circuit, however, have found noncooperation in cases more extreme than in the present matter. In those cases, the detainee has made much greater efforts to frustrate removal proceedings than here. For example, the petitioner in *Pelich* misled the INS, providing it with "conflicting information regarding his name, his parents' names, his parents' birthplaces and residences, his birthplace and his nationality." *Pelich*, 329 F.3d at 1059; *see also Sugden v. Clark*, 2010 WL 3787110, at *4 (W.D. Wash. Aug. 25, 2010) (petitioner failed to cooperate with his removal by making "misrepresentations regarding his identity and citizenship"). He also refused to fill out a Polish passport application. *Id.* In *Lema*, the petitioner, who was actually Ethiopian, told the Ethiopian consulate that he was Eritrean, preventing his receipt of travel documents from that country for removal purposes. 341 F.3d at 855, 857. In other cases, habeas petitioners found uncooperative have refused to travel even when their documents are secured. *See, e.g.*, *Diouf v. Mukasey*, 542 F.3d 1222, 1233 (9th Cir. 2008) (rejecting habeas petition where petitioner refused to travel despite the government twice completing the process); *Andemicael v. Noem*, 2025 WL 3725651, at *4 (C.D. Cal. Nov. 14, 2025) (denying habeas petition where petitioner refused to travel after government "successfully completed the arrangement and travel documents for Petitioner's removal to Eritrea").

Here, Respondents do not point to sufficient evidence that Petitioner was noncooperative. The government's sworn declaration says that Petitioner "refused to provide any third countries he would be willing to go to," Dkt. # 5 ¶ 12, which does not amount to an affirmative misrepresentation or refusal to apply for travel documents as in *Pelich* and *Lema*. Second, Respondents say that Petitioner received a failure to comply notice on December 12, 2025, Dkt. # 4 at 2, but their sworn declaration does not attest to any such document, and it is not before the Court. Dkt. # 7 ¶ 22. Third, Respondents point to the failure to sign or acknowledge service of the "Warning of Failure to Depart" form, but by the government's own admission, it presented that document to Petitioner *after* he filed his habeas petition, which means it cannot be used to show his alleged noncooperation. Nor is that document (or the December notice) before the Court, and Petitioner contests their probative value in his traverse. *See* Dkt. # 7 ¶¶ 18–19 (citing *Kebe v. Gurule*, 2016 WL 6404170, at *6 (D. Ariz. Sept. 29, 2016) (finding no failure to cooperate where "Respondent argues that Petitioner is refusing to produce information, but fail[s] to identify what information has not been provided")). Petitioner could reasonably have refused to sign such a form while his habeas petition was pending. Excluding the alleged failure to comply notice from December, of which this Court has no evidence, and the belated attempt to present Petitioner with the warning form, the government's sole evidence of noncooperation is its assertion that Petitioner did not identify a third country. This is not sufficient to show noncooperation. *Cf. Ghasedi v. Wamsley*, 2025 WL 3699705, at *6 (W.D. Wash. Dec. 1, 2025) (government's bare assertion that the petitioner "was 'determined as not being cooperative in obtaining a travel document'" insufficient evidence to deny habeas petition) Further, at least one court in this Circuit has ruled that a petitioner's lack of desire to go to a third country where they fear harm cannot amount to a failure to cooperate that would be fatal to a habeas petition. *See Abramian v. Bondi*, 2026 WL 166907, at *6 (C.D. Cal. Jan. 16, 2026) (rejecting noncooperation

ORDER - 7

argument because petitioners "can hardly be faulted for objecting now they have learned ICE seeks to remove them to Eritrea—a third country with which they have no connections and in which they fear harm").

Thus, Respondents have failed to show cause why the writ of habeas corpus should not issue on the basis that Petitioner's removal is not reasonably foreseeable, and thus his continued detention offends due process. This conclusion also requires that the government not re-detain Petitioner without notice and a hearing and absent changed circumstances, as this Court has ruled in similar circumstances. *See, e.g.*, *Faqeri v. Scott*, Case No. 2:26-cv-000003, 2026 WL 194475 (W.D. Wash. Jan. 26, 2026); *Kumar v. Wamsley*, Case No. 2:25-cv-01772-JHC-BAT, 2026 WL 251798 (W.D. Wash. Jan. 30, 2026); *cf. Y.M.M. v. Wamsley*, 2025 WL 3101782, at *2 (W.D. Wash. Nov. 6, 2025) (re-detention absent changed circumstances violates due process). Contrary to Respondent's position, Dkt. # 4 at 11–12, that Petitioner was not previously subject to supervised release presents no obstacle, because due process affords him a right to a hearing before re-detention.

2.    Procedural due process claim against third-country removal

Second, Petitioner contends that to comply with the due process requirements of the Fifth Amendment, the INA, and the CAT, the government must provide Petitioner a meaningful notice and an opportunity to respond to any attempt to remove him to a third country in any later reopened removal proceedings. Dkt. # 1 at 19. Petitioner says that he must be allowed to make a "fear-based claim against his removal to a third country," and that ICE's current process does not satisfy due process because it allows for third country removal with essentially no process and with "flagrantly insufficient notice (6–24 hours)." *Id.* at 19.

Respondents say that Petitioner's due process argument seeks relief "for procedures that DHS already provides as a matter of policy." Dkt. # 4 at 12. They say that once Petitioner

ORDER - 8

collaborates in identifying a third country, he already possesses a right to claim fear of removal to that country and a referral to USCIS for an interview.  *Id.*  Respondents say that he may also move to reopen his removal proceedings on his own under 8 C.F.R. § 1003.23(b)(4)(i).  And last, Respondents say that Petitioner, as a member of the plaintiff class, is covered by the preliminary injunction preventing third-country removals without notice in *D.V.D. v. Department of Homeland Security*, 2025 WL 1453640, at *1 (D. Mass. May 21, 2025)—but the Supreme Court's stay of that injunction, 145 S. Ct. 2153, __ U.S. __ (2025), also binds Petitioner as a member of the plaintiff class, precluding the relief he seeks.  Dkt. # 4 at 13.

The Court first addresses Respondents' contention that Petitioner is a member of the plaintiff class in *D.V.D.*  The Court concurs with a sister court in this District that the Supreme Court's stay in *D.V.D.*, given that it is not a decision on the merits and contravenes Ninth Circuit law, does not preclude courts in this Circuit from granting similar relief.  *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 730–33 (W.D. Wash. 2025); *see also Arenado-Borges v. Bondi*, 2025 WL 3687518, at *5 (W.D. Wash. Dec. 19, 2025) (same).  Courts in this District have continued to grant the same relief provided by the *D.V.D.* injunction, despite its stay.  *See, e.g.*, *J.R. v. Bostock*, 796 F. Supp. 3d 684, 690 (W.D. Wash. 2025) (granting same relief provided by stayed *D.V.D.* injunction); *Baltodano v. Bondi*, 2025 WL 2987766, at *2–3 (W.D. Wash. Oct. 23, 2025) (same; citing *Nguyen*).  And the Court finds that Respondents' arguments on comity, Dkt. # 4 at 13–14, unpersuasive considering the cited decisions.  Thus, the Court joins other courts in this District in concluding that the stay of the *D.V.D.* injunction does not prevent it from issuing relief on this question to Petitioner in this case.

The Court also agrees with *Nguyen* and its many other sister courts in this District and Circuit that the requirements of due process "cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings," *contra* Respondents' position

ORDER - 9

(Dkt. # 4 at 12), but rather, "the removal proceedings *must* be reopened so that a hearing can be held." *Nguyen*, 796 F. Supp. 3d at 727 (emphasis added) (citing *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1011 (W.D. Wash. 2019)); *see also Arenado-Borges*, 2025 WL 3687518, at *6 ("[T]o comply with due process, ICE must provide notice and a meaningful opportunity for the petitioner to present any claim of fear of persecution or harm upon removal to a newly designated third country."); *Baltodano*, 2025 WL 2987766, at *3 (same); *Esmaeli v. Noem*, 2026 WL 240661, at *6 (S.D. Cal. Jan. 29, 2026) (same). The Court concludes that Respondents have not shown cause as to why the habeas writ should not be granted on the basis that due process does not require a hearing before Petitioner be removed to a third country.

        3.        Substantive due process claim prohibiting punitive third-party banishment

Petitioner's third argument is that the Fifth and Eighth Amendments to the Constitution prevents third-country removal where it is "designed to impose a severe punishment" on detainees. Dkt. # 1 at 21. Petitioner argues that such removal is a punitive banishment that amounts to an "infamous punishment," prohibited in the immigration context by the Supreme Court. *Id.* at 20 (citing *Wong Wing v. United States*, 163 U.S. 228, 237 (1896)).

Respondents contend that Petitioner's argument here amounts to a facial constitutional challenge to a governmental policy, but that Petitioner cannot meet the burden for such a challenge because it rests on "speculative allegations" that such removal consists of a "punishment." Dkt. # 4 at 14–15 (citing *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998). And Respondents say that Petitioner cannot make an as-applied challenge, because he pleads no supporting facts: Petitioner does not allege any designated third country, nor does the record show that any exists. *Id.* at 15.

The Court notes that many other sister courts in this District have rejected this argument and found that third-country removals, at least to certain war-torn countries like South Sudan, are

ORDER - 10

intended to be and in fact are punitive and are thus unconstitutional both facially and as-applied. *See, e.g.*, *Nguyen*, 796 F. Supp. 3d at 732–35; *Abubaka v. Bondi*, 2025 WL 3204369, at *7–8 (W.D. Wash. Nov. 17, 2025). But the Court agrees with Respondents that the issue is not ripe because the government has identified no third countries to which Petitioner could be removed. The *Nguyen* Court benefited from attestations by counsel and sworn declarations that similarly situated individuals as Petitioner had been removed to South Sudan and imprisoned incommunicado. *See Nguyen*, 796 F. Supp. 3d at 716–17. That is not the case here. *See Microsoft Corp. v. United States,* 233 F. Supp. 3d 887, 911 (W.D. Wash. 2017) ("A plaintiff asserting an as-applied challenge must allege sufficient facts to demonstrate a [challenged governmental action's] unconstitutionality as applied to [the plaintiff's] activities.") (citation omitted). And the absence of any specific facts here also suggest that Petitioner's contention may amount to a speculative allegation fatal to a facial challenge to the policy. Thus, the Court declines to reach this issue.

## IV
### Conclusion

For these reasons, the Court:

(1) GRANTS the Petition for Writ of Habeas Corpus (Dkt. # 1);

(2) ORDERS that Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf shall release Petitioner from detention immediately, subject to reasonable conditions of supervision;

(3) ORDERS that Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf may not re-detain Petitioner unless and until he is provided with adequate notice and a hearing before an immigration court to determine whether re-detention is appropriate;

(4) ORDERS that Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf may not remove Petitioner to any third country unless and until he is provided with adequate notice and a hearing before a neutral decisionmaker to determine whether such removal is appropriate;

(5) DIRECTS the Clerk to send uncertified copies of this Order to all counsel of record.

Dated this 6th day of February, 2026.

*John H. Chun*
John H. Chun
United States District Judge